Karen NOWAK, Plaintiff,

v.

CITY OF CALUMET CITY, Robert C. Stefaniak and James J. Shutoski, Defendants.

No. 86 C 1859.

United States District Court, N.D. of Illinois, E.D.

Dec. 10, 1986.

Louis V. Keifor, Calumet City, Ill., for plaintiff.

William J. Mullins, Ruberry & Palmer, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Karen Nowak filed this suit under 42 U.S.C. § 1983 (1982) alleging that defendants, the City of Calumet City ("the City"), the City's Mayor, Robert C. Stefaniak and the City's Chief of Police, James J. Shutoski, violated her due process rights when they fired her from the position of reserve police officer[1] without notice or an opportunity to challenge her dismissal at a hearing. Defendants moved for summary judgment contending that Nowak did not have a property interest in her position and was therefore not entitled to any due process. Nowak responded with her own motion for partial summary judgment arguing that she had a constitutionally-protected property interest in continued employment which was abridged without due process guaranteed by the Fifth and Fourteenth Amendments. For the reasons stated below, we deny the defendants' motion for summary judgment and grant Nowak's motion for partial summary judgment.

---

[1]. The Calumet City ordinances authorize the creation of a Reserve Police Division of not more than 25 reserve police officers who serve "when called upon by the mayor or chief of police under the supervision of the regular Police Department." Calumet City Ordinance, ch. 20, § 20–13(c). They serve as "conservators of the peace, with the power to make arrests," *id.*, but their duties vary according to the needs of the police department. Examples of their duties as reserve police officers include shopping center patrol, radar surveillance, prisoner transportation and stolen car investigations.

Fed.R.Civ.P. 56(c) mandates the entry of judgment for the moving party where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this case, as discussed below, the facts surrounding Nowak's dismissal are essentially undisputed. The matter of law to be decided is whether Nowak had a property interest in her continued employment and, if so, whether she was deprived of that interest without constitutionally-mandated process.

### I. Factual Background

Nowak was hired by the City in December 1982 to serve as an officer in the Reserve Police Division of the Calumet City Police Department ("the Department"). She was issued a badge and commission card and was sworn in as an officer. There is no dispute between the parties regarding the duties Nowak carried out as a reserve officer, which included shopping center patrol, radar surveillance, prisoner transportation, ambulance and fire department call accompaniment, identification card verification at local bars, stolen car investigations and keeping of the peace generally.

On September 10, 1984, Frank Garcia, the Reserve Police Co-Ordinator for the Department, told Nowak to turn in her badge and commission card and orally advised her that she was being temporarily suspended. Nowak Affidavit ¶ 12. Garcia also informed Nowak that she would receive written notice of the action being taken against her. *Id.* Nowak made several unsuccessful requests for reinstatement, and more than six months later, in April 1985, she was advised by Mayor Stefaniak that she would receive a notice of a hearing to consider the charges against her. *Id.* at ¶ 14. In May 1985, Stefaniak told her that she had been terminated on the recommendation of Chief Shutoski. *Id.* at ¶ 15. In the two years since her termination, Nowak has received neither notice indicating the reason for her termination nor any type of hearing. There is no evidence that Nowak ever saw a copy of a written report, if there was any such report, discussing her termination and presented to the City Council of Calumet City, as required by Calumet City Ordinance, ch. 20, § 20–13(m). Thus, there is no dispute that the defendants summarily discharged Nowak, that they did not notify Nowak of the reason for her discharge and that no hearing was provided either before or after her termination.

The parties refer to Illinois statutory provisions, Calumet City ordinances, General and Special Orders of the Department and the Rules and Regulations of the Department ("Rules") as potential sources of the asserted property interest. Perhaps the most important of these is the Rules, which describe the scope of reserve officer employment. They provide in part:

> [s]ince Reserve or part time Police Officers do not come under the jurisdiction of the Board of Fire and Police Commissioners, they may be summarily discharged *for just cause* by the Mayor after a written notice of the reasons by the Chief of Police, but with or without a hearing.

Rules, ¶ 18A (emphasis added).

### II. Nowak's Due Process Claims

For this Court to determine that there has been a deprivation of Nowak's property interest without due process, we must engage in a two-part inquiry. First, we must establish whether Nowak had a property interest in her position as a reserve officer. If she does, we must examine whether she was deprived of that interest without due process of law. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982).

### A. Property Interest

It is fundamental that in determining the existence of a property interest, we must look not to the Constitution but to "existing rules or understandings that stem from an independent source such as state law." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Re-*

*gents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Furthermore, the person claiming the property interest must show more than a unilateral expectation of that interest, but a "legitimate claim of entitlement" to it. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The legitimate expectations of the property interest holder may be created by state statute or local ordinance, *see, e.g., Ciechon v. City of Chicago,* 686 F.2d 511, 517 n. 3 (7th Cir.1982), or they may arise from less formal sources such as rules or "mutually explicit understandings" between the parties. *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 983 (7th Cir.1986).

With these standards in mind, we turn to the primary arguments of the parties. Each side relies on a single case which it deems dispositive. Nowak rests her claim on *Snowdon v. City of Calumet City,* No. 75 C 3996, slip op. (N.D.Ill. May 20, 1976), which also involved a due process claim filed by a reserve police officer of Calumet City who was dismissed without notice or a hearing. In that case, the court granted partial summary judgment to the plaintiff after concluding that he had a legitimate property expectation because he performed duties which exceeded his ordinary role as an "auxiliary officer" and more closely aligned him with a regular police officer's position. *Id.* at 5. Furthermore, although the court found it difficult to classify the status of the reserve police force in the statutory scheme, it relied on the fact that a Calumet City ordinance tacitly acknowledged the participation of the city council in the firing decision (though the council did not participate in the plaintiff's case) and accordingly held that the plaintiff had a protectible property interest in continued employment as a reserve police officer. *Id.* at 7.

The defendants argue that the force of *Snowdon* has been undermined by a later state court decision regarding the termination of an "auxiliary officer" in the Village of Justice. *Wantroba v. Rusch,* 55 Ill.App.3d 523, 13 Ill.Dec. 524, 371 N.E.2d 241 (1st Dist.1977). In *Wantroba,* a discharged patrol officer filed a state court action for a writ of mandamus ordering his reinstatement by the Village following his summary dismissal. The court held that Ill.Rev.Stat. ch. 24, ¶ 3–6–5 authorizes procedures for the appointment of auxiliary officers which are distinct from those regarding regular police officers and thus dismissals of auxiliary officers were not bound by the process required to be invoked before terminating regular police officers. *Id.* at 526–27, 13 Ill.Dec. at 527, 371 N.E.2d at 244. The court rejected the plaintiff's argument that because his duties exceeded those ordinarily performed by auxiliary officers he was entitled to a higher degree of formality in his dismissal, noting that ¶ 3–6–5 specifically provides for the discretionary use of auxiliary officers in regular police work. *Id.* at 527, 13 Ill. Dec. at 527, 371 N.E.2d at 244. The principal dispute in *Wantroba,* however, was whether the plaintiff was covered specifically by the procedures established for dismissal of a *regular* police officer. The court never addressed any independent sources from which the plaintiff could have derived a property interest in his position as an auxiliary officer.

We find neither *Snowdon* nor *Wantroba* persuasive in the case before us. *Snowdon,* while addressing a claim similar to Nowak's, does not rely on property expectations arising from informal understandings such as those suggested by the Rules here. Furthermore, in our view the *Snowdon* court focused unnecessarily on the formality of the proceedings involved in the dismissal of a reserve police officer rather than on the substantive property right arising from statutes, ordinances, rules, contract or mutually explicit understandings. *Wantroba* is not helpful either. Nowak does not claim only that she is entitled to process required prior to dismissal of regular police officers by Ill.Rev. Stat. ch. 24, ¶ 10–2.1–17 (1985), but that independent of any specific statutory provisions, she has received a legitimate expec-

tation of a property interest protected by the Constitution. In *Wantroba*, there were no additional ordinances or rules from which a mutually explicit understanding of a property interest in continued employment might reasonably have been inferred. The court merely held that the auxiliary officers had no right to a hearing under the statute authorizing predeprivation process for regular officers. Paragraph 3–6–5 does not proscribe the establishment of any such procedures for auxiliary police officers any more than it requires them. Ill. Rev.Stat. ch. 24, ¶ 3–6–5 (1985).

■ As we observed earlier, a property interest may arise from rules or understandings which have less formality than a state statute or municipal ordinance. Indeed, in the absence of such provisions, extrinsic evidence of a rule, policy or practice upon which legitimate expectation of continued employment can be based may provide the legal basis for the property interest. *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1263 (7th Cir.1985); *Kufalk v. Hart*, 610 F.Supp. 1178, 1190 (N.D.Ill.1985). *See also Hermes v. Hein*, 742 F.2d 350, 354–55 (7th Cir.1984) (property interest in promotion may arise out of a *de facto* promotional program); *Begg v. Moffitt*, 555 F.Supp. 1344 (N.D.Ill.1983) (property interest in outside, part-time employment arose out of long-standing custom and practice).

■ In this case, we hold that Nowak had a legitimate claim to her employment as a reserve officer arising from the long-standing rules and regulations of her employer, specifically Paragraph 18A of the Rules and Regulations of the Department which states in full:

[s]ince Reserve or part time Police Officers do not come under the jurisdiction of the Board of Fire and Police Commissioners, they may be summarily discharged *for just cause* by the Mayor after a written notice of the reasons by the Chief of Police, but with or without a hearing.

¶ 18A, Rules (emphasis added). The hallmark of a property interest protected by the Fifth and Fourteenth Amendments is individual entitlement grounded in law which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–1, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982); *Begg v. Moffitt*, 555 F.Supp. 1344, 1348 & n. 9 (N.D.Ill.1983). The Rules and Regulations of the Department specifically define that interest by stating that a reserve officer can be discharged *only* for just cause.

Furthermore, these Rules were promulgated and approved by Nowak's employers (i.e., the defendants) and impose enforceable obligations on them.[2] Section 20–14 of the City's ordinances authorizes the chief of police to prescribe "such rules and regulations for the hours of duty, vacations, uniforms and conduct of the *members of the police department* ... and such rules when approved by the mayor or council shall be binding on such members." Though another section of the ordinances clearly states that reserve police officers "shall not be considered members of the *regular* police department," Calumet City Ordinance, ch. 20, § 20–13(c) (emphasis added), the Rules are clearly designed to cover all members of the police department, regular and reserve. In fact, as cited above, the Rules themselves contain a provision regarding the dismissal of reserve officers. *See* Rules, ¶ 18A. Accordingly, this Court finds that Nowak derives

---

**2.** We note that the question of whether the Rules as drafted and authorized by the defendants suggest a "mutually explicit understanding" of a property interest in the continued employment of reserve police officers is distinct from the issue of the contractual ramifications of the terms of employer "policy manuals," which is currently a disputed area of law in the Illinois courts. *See Enis v. Continental Illinois National Bank*, 795 F.2d 39, 40–42 (7th Cir.1986). First,

official rules promulgated under statutory authority by a local governmental entity are much more formal than guidelines set forth by an employer, private or public, in a policy manual. Second, the common law standards for modification or formation of contracts are analytically distinct from the standards for evaluating the existence of rules or customs which might provide a mutually explicit understanding of a property interest for constitutional purposes.

a legitimate expectation of a property interest in her continued employment from the mutually explicit understanding embodied in Paragraph 18A that dismissal would be only for just cause.

Although the Commentary to Paragraph 18A[3] states that a Reserve Officer has "no expectation of job security," in fact Paragraph 18A makes it clear that a reserve officer can legitimately expect to continue working until or unless she does something that constitutes "just cause" for dismissal. Moreover, although the Commentary states that there is no requirement "in most cases" for notice of a reason for summary dismissal and no requirement for a hearing, these procedures must be carried out if as a matter of law a property right independently exists. A municipality cannot simply write away an otherwise constitutionally-required process.

[4] Nor can the defendants find comfort in the fact that Paragraph 18A specifically states that no hearing is necessary before the dismissal "for just cause." In a manner similar to that taken by the *Wantroba* court, defendants focus on the procedures that surround the appointment and termination of reserve police officers, pointing out the differences from the appointment and termination procedures used for regular police officers. The differences in hiring and firing procedures are of no import in defining the property interest, since a constitutionally-protected property right cannot be defined by the very procedures used for its deprivation. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

### B. The Extent of Due Process to be Accorded Plaintiff

■ Having established that Nowak has a property interest in her continued employment, we turn to the question of what process was constitutionally required before the defendants could deprive her of that interest. "An essential principle of due process is that a deprivation of ... property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–7, 94 L.Ed. 865 (1950). Persons whose property rights are in the process of being finally destroyed must be given "some kind of prior hearing," *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493, 84 L.Ed.2d 494 (1985); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972), and the Supreme Court has emphasized the long-settled rule that this hearing should precede termination of employment. Though a full evidentiary hearing is not necessary, the required process must include notice to the employee, an explanation of the charges against the employee and an opportunity to respond as to why termination should not take place. *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1265 (7th Cir.1985). The Court in *Loudermill* stated that this was due process sufficient to satisfy the constitutional requirements and to balance the employee's interest in retaining employment and the employer's interest in terminating unsatisfactory employees.

■ In this case, Nowak was never notified of the reasons for her termination or given an opportunity to rebut those reasons. Indeed, she did not even receive the only formal process laid out in the Rules, a written notice of reasons for discharge by the Chief of Police. *See* Rules, ¶ 18A. Accordingly, we find that she was deprived of a protectible property interest without due process and allow her motion for partial summary judgment to the extent that she seeks declaratory relief and an injunction

---

3. The Commentary to Paragraph 18A reads as follows:

[p]aragraph 18 covers the procedures that apply to summary discharge of Reserve or part time Police Officers. Since Reserve or part time Police Officers have no expectation of job security and in most cases no right to due process hearings, they can be summarily discharged. Although the law does not require it, a Reserve or part time officer should be given notice of the reason for his or her summary dismissal.

ordering the defendants to provide her with notice and a hearing.

### III. Conclusion

We hold that Nowak had a property interest in her position as a City reserve police officer, and that defendants deprived her of that interest without due process of law as required by the Fifth and Fourteenth Amendments. Nowak has a property interest in continued employment as defined in the Rules and her termination by the defendants has deprived her of that interest without constitutionally-required notice of the reason for her termination and some kind of hearing. For these reasons, the Court denies defendants' request for summary judgment and grants Nowak's motion for partial summary judgment declaring that the defendants have deprived her of her property interest in continued employment without due process of law. As additional relief, we hereby order defendants to conduct some type of hearing, after reasonable notice and an opportunity to respond, to determine if Nowak was discharged for just cause.[4] It is so ordered.

---

**4.** The issues of damages and attorney's fees are distinct questions, and the existence and extent of any damages would be dependent on whether, notwithstanding the lack of notice and a hearing, there was just cause to discharge Nowak. *See Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).